IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANGELA K. GLIDDEN, )
on behalf of B.T.T., a minor, )
 )
       Plaintiff, )
 )
vs. ) Case No. 13-cv-237-TLW
 )
CAROLYN W. COLVIN,[1] )
Acting Commissioner )
of the Social Security Administration, )
 )
       Defendant. )

**OPINION AND ORDER**

Plaintiff Angela Glidden, on behalf of B.T.T., a minor child, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying the minor child's claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 8). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**Introduction**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## Sequential Evaluation for Child's Disability Benefits

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: (1) meets, medically equals, or functionally equals the listings of impairments for children;[2] and (2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by the impairments are analyzed to determine whether they "functionally" equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

---

[2] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## Background Information

Plaintiff's mother filed an application for SSI benefits for plaintiff, then a ten-year-old male, on November 18, 2010, alleging a disability onset date of November 18, 2010. (R. 108). Plaintiff's application alleged a number of severe impairments, including a learning disability, low birth weight, brain damage, and Hydrocephalus. (R. 112). Following an ALJ hearing on June 27, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (R. 14-28). The Appeals Council declined to review the ALJ's decision. (R. 4-6). Plaintiff appealed. (Dkt. # 2).

Plaintiff's mother testified that plaintiff's classes were split between special education classes and regular classes with modifications. (R. 244). Plaintiff experiences difficulty completing school work and has trouble remembering more than two assigned tasks at a time. (R. 246-48). On December 20, 2010, plaintiff's sixth grade teacher, Debbie Ferguson, reported that plaintiff read at a second grade level and understood written language at a second or third grade level. (R. 118). Ms. Ferguson also indicated that in the domain of acquiring and using information plaintiff exhibited serious or obvious problems in the areas of reading and comprehending written material; expressing ideas in written form; recalling and applying previously learned material; and understanding school and vocabulary content. (R. 119). In addition, Ms. Ferguson advised that in the domain of attending and completing tasks plaintiff had a serious or obvious problem completing class assignments, completing work accurately,

3

focusing long enough to finish an assigned activity or task, and refocusing to task when necessary. (R. 120).

On April 27, 2012, plaintiff's seventh grade teacher, Patricia Montgomery, indicated that plaintiff performed at a third or fourth grade level in math and written language. (R. 165). Ms. Montgomery determined that plaintiff had very serious or serious problems expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying the problem-solving skills in class discussion, and an obvious problem in the remaining activities. (R. 166). Regarding the area of attending and completing tasks, Ms. Montgomery opined that plaintiff had a very serious, serious, or obvious problem paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, completing class homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. (R. 167).

In addition to the teachers' reports, two non-examining physicians employed by the State Disability Determination Services found that plaintiff was not disabled. (R. 191-96, 220-25). On April 21, 2011, Dr. Massad reported that plaintiff exhibited less than marked limitations in the domains of attending and completing tasks, and acquiring and using information. (R. 193-94). Then, on August 12, 2011, Dr. Delhota and Dr. Kelly reexamined plaintiff's records and, based on the consultative examination records of William Cooper, Ph.D., concluded that he exhibited a less than marked limitation in the acquiring and using information domain and a marked limitation in the attending and completing tasks domain. (R. 222).

Plaintiff's mother began expressing concerns regarding plaintiff's possible ADHD to plaintiff's treating physician, Dr. August, on June 16, 2011. (R. 202-03). Dr. August

recommended that plaintiff receive a psychological evaluation, and her notes state that she would "refer him to Dr. Alan Conger for evaluation." (R. 203).[3]

Dr. Cooper administered a consultative psychological examination on July 28, 2011. (R. 203, 218-19). Dr. Cooper's evaluation revealed that plaintiff had a full scale IQ score of 71, placing plaintiff in the borderline range of intellectual functioning. (R. 219). During the evaluation, Dr. Cooper noted that plaintiff expressed himself adequately, but occasionally tapped his fingers and appeared restless and bored midway through the examination. (R. 218-29). Dr. Cooper concluded that plaintiff may have attention deficient hyper-activity disorder. (R. 219).

On March 23, 2012, Dr. August diagnosed plaintiff with ADHD and began prescribing Concerta. (R. 229-30). Plaintiff's father reported that the medication helped improve plaintiff's behavior, enabling plaintiff to finish his school work. (R. 231). Plaintiff and his mother reiterated this improvement when testifying at the ALJ hearing. (R. 240-41, 245-46).

### **The ALJ's Decision**

The ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listing. (R. 17). He also concluded, by reviewing the six domains applicable to a child's SSI application, that plaintiff's impairments did not functionally equal a listing. (R. 17-28). In the area of acquiring and using information, plaintiff had a less than marked limitation, based upon the intellectual testing given on July 28, 2011 by Dr. Cooper, and Ms. Montgomery's teacher evaluation produced on April 27, 2012. (R. 23). In the area of attending and completing tasks, plaintiff exhibited a marked limitation. (R. 24). The ALJ based this determination on Dr. Cooper's evaluation of plaintiff's actions during the IQ test on July 28, 2011, Ms. Montgomery's teacher questionnaire on April 27, 2012, and plaintiff's mother's testimony. Id. In addition,

---

[3] No records from Dr. Conger appear in the transcript. Subsequent notes from Dr. August show that she noted that plaintiff was "evaluated by Dr. Larry Vaught," but that evaluation is also not in this record. (R. 229).

plaintiff exhibited a less than marked limitation in the area of interacting and relating with others based on Dr. Cooper's examination, plaintiff's teachers' reports, and plaintiff's mother's testimony. (R. 25). Plaintiff had no limitation in the three remaining areas (moving about and manipulating objects; caring for yourself; and health and physical well-being). (R. 25-28). To equal a listing, plaintiff had to have two marked limitations or one extreme limitation. Because the ALJ found only one marked limitation, he found plaintiff not disabled. (R. 28).

## Issues Raised

Plaintiff's allegations of error are as follows:

1) The ALJ erred in concluding that plaintiff suffered only a marked limitation in terms of attending and completing tasks,

2) The ALJ erred in concluding that plaintiff suffered a less than marked limitation in acquiring and using information, and

3) The ALJ inaccurately weighed two teacher evaluations regarding plaintiff's functional limitations.

(Dkt. # 14).

## Discussion

**Marked Limitations in Attending and Completing Tasks**

Plaintiff's counsel argues that the ALJ should have evaluated plaintiff as having an extreme limitation—instead of a marked limitation—in the domain of attending and completing tasks because his teachers indicated that he consistently performed at least three grade levels below his classmates. To support this conclusion, plaintiff cites 20 C.F.R. § 416.926a(e)(3), which defines extreme limitation. The regulation states that for children below eighteen, the child will have an extreme limitation when he presents "a valid score that is three standard deviations or more below the mean *on a comprehensive standardized test* designed to measure ability to function in that domain, and [the child's] day-to-day functioning in domain-related

6

activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii) (emphasis added). Plaintiff seeks to persuade the Court that this test score standard should also be applied to grade levels and can be met based solely on the evaluation of one or more teachers. However, the regulation explicitly requires a valid score on a "standardized test," along with evidence that the child's day to day functioning is consistent with the test score. Here, there is certainly evidence that the child's day to day functioning is well below grade level, but such evidence alone is insufficient under the regulation absent the necessary "comprehensive standardized test." In addition, plaintiff has not cited, nor has the Court found, any cases to support the plaintiff's argument. Additionally, analysis of the ALJ's discussion under this domain shows that he relied in part on the opinion of plaintiff's teacher, Ms. Montgomery, in reaching his conclusion that plaintiff suffered a marked limitation in this domain.

Therefore, the Court finds that the ALJ did not commit error on this issue.

**Less than Marked Limitation in Acquiring and Using Information**

Plaintiff's counsel contends that plaintiff has a marked limitation in the domain of acquiring and using information based on: (1) plaintiff's IQ score of 71; (2) his severe impairments, specifically ADHD; and (3) two teacher evaluations indicating plaintiff has very serious problems comprehending new material and recalling and applying newly learned concepts. Plaintiff's counsel more specifically argues that plaintiff's ADHD combined with his IQ score equates to a marked limitation in the domain of acquiring and using information. (Dkt. # 14).

The Commissioner attempts to salvage the ALJ's decision with the *post hoc* argument that "although the ALJ could have been more explicit about tying the evidence to the specific domain[]," the ALJ "considered Ms. Ferguson's December 2010 report," and that Ms.

7

Ferguson's opinion "corresponds to the ALJ's finding that Plaintiff had a less than marked limitation in this domain." (Dkt. # 18 at 5).

The ALJ unambiguously explained that he based his determination that plaintiff had less than a marked limitation in acquiring and using information on plaintiff's IQ test and Ms. Montgomery's (plaintiff's seventh grade teacher) questionnaire. (R. 23). As to plaintiff's IQ, while 71 is a low score, placing him in the Borderline range of intellectual functioning, it does not alone constitute a disability. As to Ms. Montgomery's questionnaire, she indicated that plaintiff has a very serious problem applying problem-solving skills in class discussions, serious problems expressing ideas in written form, learning new material, and recalling and applying previously learned material. In the remaining six areas, comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, and providing organized oral explanations and adequate descriptions, Ms. Montgomery reported that plaintiff suffered "an obvious problem." (R. 166). The ALJ did not address plaintiff's ADHD or his symptoms resulting from the disorder under this domain, nor did he address Ms. Ferguson's teacher evaluation.

Under acquiring and using information, the ALJ considered Ms. Montgomery's report—which actually reported greater limitations then Ms. Ferguson's report—and Dr. Cooper's evaluation to determine that plaintiff suffered only a less than marked limitation. However, plaintiff's main contention is that the ALJ should have also considered plaintiff's ADHD symptoms under this domain.

The absence of a discussion by the ALJ of plaintiff's ADHD symptoms with respect to the domain of acquiring and using information is understandable and not error. 20 C.F.R. §

8

416.926a provides examples that may illustrate limited functioning in each particular domain. Based on the regulation, problems in the domain of acquiring and using information—where plaintiff's counsel alleges error—can manifest themselves in a child's inability to "demonstrate understanding of words about space, size, or time" and "rhyme words or the sounds in words." 20 C.F.R. § 416.926a(g)(3). The child may have difficulty "recalling important things . . . learned in school yesterday" and "solving mathematics questions or computing arithmetic answers." Id. In addition, the child may "talk only in short, simple sentences and have difficulty explaining what [he or she] mean[s]." Id.

In contrast, problems in the domain of attending and completing tasks may include the child being "easily startled, distracted, or overreative to sounds, sights, movements, or touch." 20 C.F.R. § 416.926a(h)(3). The child may be "slow to focus on, or fail to complete activities of interest to [him or her], e.g. games or art projects" and may "require extra supervision to keep [him or her] engaged in an activity." Id. In addition, the child may "repeatedly become sidetracked from [his or her] activities or [he or she] may frequently interrupt others" and may be "easily frustrated and give up on tasks, including ones [he or she is] capable of completing." Id.

After examining the examples of limited functioning in both domains, the regulation makes clear that symptoms associated with ADHD are more accurately evaluated under the domain of attending and completing tasks, not acquiring and using information. Properly, as support for his determination of a marked limitation in the domain of attending and completing tasks, the ALJ specifically listed Dr. Cooper's observations that plaintiff "exhibited lapses in attention and concentration," and "occasionally tapped his fingers during testing and began to appear restless and bored midway through the examination." (R. 24). Also under that domain, the ALJ considered Ms. Montgomery's report and plaintiff's mother's testimony regarding

plaintiff's ADHD symptoms. Id. Ms. Montgomery's questionnaire indicated that in the domain of attending and completing tasks plaintiff suffered very serious problems completing class/homework assignments and working at a reasonable pace/finishing on time. She also reported that plaintiff exhibits a serious problem completing work accurately without careless mistakes and obvious problems in four additional areas. (R. 167).

Thus, plaintiff's counsel's reference to plaintiff's ADHD with respect to his ability to acquire and use information is misplaced. In fact, the ALJ used Dr. Cooper's observations, Ms. Montgomery's report, and plaintiff's mother's testimony—all describing symptoms associated with ADHD—to support his determination that plaintiff exhibited a marked limitation in attending and completing tasks. (R. 24). Moreover, plaintiff's counsel has provided no authority to support his contention that the ALJ should have considered these symptoms under the acquiring and using information domain, especially considering that the ALJ correctly considered plaintiff's ADHD under the attending and completing tasks domain. Therefore, the Court finds that the ALJ properly considered plaintiff's ADHD under the correct domain.

However, the Court does find error in the weight the ALJ afforded to plaintiff's teacher, Ms. Montgomery, under this domain. A reading of the ALJ's discussion under each domain leads to a reasonable assumption that the ALJ relied, at least in part, on Ms. Montgomery's report, accepting as true those portions that he highlighted in his domain rating discussions. Following that reasoning, it is unclear how the ALJ reached the conclusion of a "less than marked" limitation in this domain. Ms. Montgomery's report, coupled with the consultative examiner's report, could support a finding of a marked limitation. However, since the Court may not reweigh the evidence, this issue is remanded to the ALJ to clarify his reasoning on this domain. Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir. 2013).

**Inaccurate Weighing of Teacher Evaluations**

Plaintiff alleges that the ALJ inaccurately weighed Ms. Ferguson's and Ms. Montgomery's teacher questionnaires. Ms. Ferguson's evaluation—completed in 2010—concludes under acquiring and using information that plaintiff has serious problems reading and comprehending written material, expressing ideas in written form, and recalling and applying previously learned material. In addition, she concludes that he has an obvious problem understanding school and content vocabulary. (R. 119). Regarding the domain of attending and completing tasks, Ms. Ferguson determined that plaintiff has serious problems completing class/homework assignments and completing work accurately without careless mistakes. She also indicated that plaintiff has obvious problems focusing long enough to finish an assigned activity or task and refocusing on task when necessary. (R. 120).

Ms. Montgomery's report—completed over one year after Ms. Ferguson's report—indicates that in the area of acquiring and using information, plaintiff suffers a very serious problem applying problem-solving skills in class discussions and serious problems expressing ideas in written form, learning new material, and recalling and applying previously learned material. In all the remaining activities plaintiff exhibits obvious problems. (R. 166). In addition, Ms. Montgomery's evaluation provided that in the domain of attending and completing tasks plaintiff has very serious problems working at a reasonable pace/finishing on time and completing class/homework assignment, he also has a serious problem completing work accurately without careless mistakes. Plaintiff exhibits obvious problem in four additional activities listed under that domain. (R. 167).

The ALJ did not specifically address the weight given to Ms. Montgomery's and Ms. Ferguson's non-medical source evidence. However, the discussion the ALJ does use to support

his decisions under each domain show reasonable support that he did afford Ms. Montgomery's report at least some weight.

Ms. Montgomery's teacher report is listed as evidence considered under both acquiring and using information and attending and completing tasks. (R. 23-24). Mrs. Ferguson's evaluation is discussed in detail previously in the ALJ's opinion. (R. 19). In addition, while the ALJ lists Ms. Montgomery's evaluation—not Ms. Ferguson's evaluation—as support for his conclusion in the domains of acquiring and using information, and attending and completing tasks, he lists *both* evaluations as support for his less than marked limitation determination in the domain of interacting and relating with others. (R. 25). Thus, it is clear that the ALJ considered both teacher evaluations.

For the aforementioned reasoning, the Court rejects this argument.

## **Conclusion**

For the reasons stated above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent herewith.

SO ORDERED this 20th day of May, 2014.

_____
T. Lane Wilson
United States Magistrate Judge